2024 IL App (1st) 221759-U

No. 1-22-1759

Order filed June 21, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 6261 |
| | ) | |
| CARLOS ROSADO, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's 18-year sentence for possession of a controlled substance with intent to deliver as the trial court did not improperly consider in aggravation a factor inherent in the offense.

¶ 2   Following a jury trial, defendant Carlos Rosado was found guilty of possession of a controlled substance with intent to deliver and sentenced to 18 years in prison. On appeal, defendant challenges his sentence, arguing that the trial court improperly considered in aggravation the societal harm from drugs, which was a factor inherent in the offense. We affirm.

¶ 3                                  BACKGROUND

¶ 4      Defendant was convicted of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2012)) after a jury trial. Defendant was arrested after police executed a search warrant at his apartment and recovered a total of 1289.6 grams of cocaine, packaged in smaller amounts. At trial, an expert in narcotics investigation opined that such an amount of cocaine could create approximately 12,890 "dime bags" for distribution with an estimated street value of $128,980.

¶ 5      Defendant's presentence investigation report (PSI) reflected that defendant was then 52 years old, divorced, and had five children. He had no gang involvement, no prior juvenile convictions, and only minor traffic offenses. He described his childhood as normal, had great relationships with his parents, and did not report abuse or neglect in his upbringing. Defendant had a 10th grade education, as he stopped attending school to help support his family. Defendant had been previously self-employed for a decade but closed his company due to marital issues. He had been working as a mechanic for a year and a half prior to the offense. Defendant had good relationships with his children and supported all of them financially. He described his family and friends as law-abiding and supportive. Defendant reported no prior or current mental health issues, drug abuse problems, or alcohol abuse problems.

¶ 6      At sentencing, the State argued in aggravation the quantity of cocaine recovered. The State noted that the "highest" possession of a controlled substance that a person could be charged with was "over 900 grams," and defendant had in his possession almost 400 grams more than that amount. The State argued that represented "12,890 bags of cocaine that could have been sold on the streets and could have affected that many people's lives," with defendant's potential "profits"

around $128,000. The State asserted defendant did this "out of greed, not out of desperation to support his family." The State noted the sentencing range was 15 to 60 years, to be served at 75%. It requested a sentence in excess of the minimum given the quantity of cocaine, the many lives that could have been affected had defendant actually sold the cocaine, and the fact he committed the crime out of greed.

¶ 7     Defense counsel argued in mitigation that the mandatory minimum sentence was an "extraordinary" sentence for the quantity of cocaine involved, and "certainly" sufficient to deter and protect the public from any harm that could possibly be posed by defendant. Counsel pointed out that defendant had no significant criminal history, lived a law-abiding life, had no connection to "violence or weapons or dangerousness of any kind," and, outside this instance, was a "model person doing what he should be doing in his life." Defendant would exit custody at an advanced age "where it is very, very unlikely for any recidivism or any danger that he might pose on the community."

¶ 8     Defense counsel presented three witnesses on defendant's behalf: Laura Rosado, defendant's daughter; Pamela Anderson, defendant's girlfriend of two years; and Demetrio Javier, defendant's younger brother.[1] All three testified to the impact on defendant's family, defendant's character as a "giving, kind, patient, loving man," and the adverse impact defendant's incarceration would have on his family, especially at his age. Counsel argued that "one event doesn't cancel out everything else one might ha[ve] done" and asked for the minimum sentence.

¶ 9     In announcing its sentence, the court recited the information reflected in the PSI, including defendant's educational and employment history, family relations, and his "non-existent" criminal

---

[1] We refer to Laura Rosado by her first name as she shares the same last name as defendant.

history, absent some traffic arrests that it would not consider. The court referenced the testimony of defendant's family, noting their "complete love and affection" for defendant. It stated there was "no excuse" for defendant's behavior because he had a loving family, was employable, and had support "all the way around him." The court stated "[t]here was no reason for the defendant to possess such a large amount of narcotics with intent to deliver." It found in "stark contrast to the love of the defendant's family that the defendant's possession with intent to deliver 12,890 dime bags potentially to be distributed to other people's family members, *** girlfriends, boyfriends and destroying other families." The court further stated that "the love and support of one family cannot be based on helping to distribute drugs to other people's families."

¶ 10    The court sentenced defendant to 18 years in prison, stating that a sentence toward the high end of the sentencing range would not be appropriate. Defense counsel did not file a motion to reconsider sentence. Defendant appealed.

¶ 11    On August 14, 2015, this court dismissed defendant's appeal for want of prosecution. *People v. Carlos Rosado*, No. 1-15-0215. On May 19, 2021, defendant filed a petition for postconviction relief, alleging ineffective assistance of counsel for failing to file a record or any other documents in his direct appeal. The State agreed that defendant's claim of ineffective assistance of appellate counsel was meritorious. Following a third stage evidentiary hearing, the trial court found that defendant was not culpably negligent for failing to present his ineffective assistance claim earlier and granted leave to file a late notice of appeal *nunc pro tunc* to the date of sentencing (December 30, 2014). As a result, despite the gap in time, this is effectively Defendant's direct appeal. See Ill. S. Ct. R. 606(b) (eff. March 12, 2021).

¶ 12                                    ANALYSIS

¶ 13    Defendant argues his 18-year sentence should either be reduced to the mandatory minimum of 15 years, or his case should be remanded for a new sentencing hearing because the trial court improperly considered in aggravation the societal harm from drugs, which was inherent in the offense of possession of a controlled substance with intent to deliver.

¶ 14    Defendant acknowledges this claim is forfeited as he did not object at sentencing or file a motion to reconsider sentence, but he contends that the error constitutes plain error under both prongs of the plain error doctrine. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("both a contemporaneous objection and a written postsentencing motion raising the issue are required" to properly preserve a sentencing error). In the alternative, he argues trial counsel was ineffective for failing to preserve the error in the trial court by objecting at sentencing and filing a motion to reconsider sentence.

¶ 15    Forfeited sentencing claims may be reviewed under the plain error doctrine, which is a "narrow and limited exception" to forfeiture. *Id*. at 545. The burden of persuasion is on the defendant, who must first establish that a "clear or obvious error occurred." *Id*. For sentencing errors, the defendant must then show either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*. This court must honor the procedural default where a defendant fails to establish plain error. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). We first determine whether an error at sentencing occurred at all. *Id.*

¶ 16    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill.

Const. 1970, art. I, § 11. The trial court has broad discretionary powers when imposing a sentence, and this court will not disturb a sentence appropriately within the statutory limits absent an abuse of discretion. *People v. Burton*, 2015 IL (1st) 131600, ¶¶ 35-36. In the sentencing context, an abuse of discretion occurs when a sentence "varies greatly from the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23.

¶ 17    In fashioning a sentence, the trial court must consider "both the seriousness of the offense and the defendant's rehabilitative potential" and carefully consider all factors in aggravation and mitigation. *Contursi*, 2019 IL App (1st) 162894, ¶ 24; *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. These factors include "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The seriousness of the offense is the most important factor in determining an appropriate sentence, and the court is not required "to give greater weight to mitigating factors than to the seriousness of the offense," nor does the "presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123.

¶ 18    Here, defendant was found guilty of possession of a controlled substance with intent to deliver 900 grams or more of a substance containing cocaine, a Class X felony carrying a sentencing range of 15 to 60 years in prison. 720 ILCS 570/401(a)(2)(D) (West 2012). Defendant argues that he was deprived of a fair sentencing hearing, as the trial court improperly considered the societal harm from drugs, a factor inherent in the offense, as an aggravating factor when

imposing the 18-year prison sentence. As defendant's 18-year sentence falls within the statutory sentencing range, it is presumed proper unless defendant can affirmatively establish the sentence was based on improper considerations. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 54.

¶ 19    A factor inherent in an offense for which a defendant has been convicted may not also serve as a factor in aggravation at sentencing. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). The prohibition on the dual use of a single factor, referred to as "double enhancement," is based on the assumption that, "in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id.* at 12. A contention that the court improperly considered an aggravating factor that was inherent in the offense is asserting that the court imposed a " 'harsher sentence than might otherwise have been imposed' " had the court not considered the improper factor. *Id.* (quoting *People v. Gonzales*, 151 Ill. 2d 79, 84 (1992)). Whether a trial court considered an improper aggravating factor at sentencing should be based on the record as a whole as opposed to focusing on a few words or statements. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47.

¶ 20    Here, defendant has not shown that the trial court relied on an improper factor in aggravation at sentencing. Defendant challenges the following remarks made by the trial court at sentencing as improperly reflecting societal harm from drugs:

> "There was no reason for the defendant to possess such a large amount of narcotics with intent to deliver, and it is in stark contrast to the love of the defendant's family that the defendant's possession with intent to deliver 12, 890 dime bags potentially to be distributed to other people's family members, other people's children, brothers, sisters, girlfriends, boyfriends and destroying other families.

***

[D]efendant's conduct did cause or threatened serious harm to other members of society.

***

[T]he sentence is necessary to deter others from committing the same crime. Fast money cannot be made by possessing large amounts of drugs which have the potential to cause great harm to other members of society."

¶ 21    Defendant contends that where a statute establishes a penalty range corresponding to a range of possession amounts, it is presumed that the legislature has already considered the societal harm of the offense. However, the prohibition against double enhancement is not applied so rigidly that the sentencing court is forced to ignore factors relevant to the imposition of a sentence. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986). As noted, penalties must be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. *Id*. Thus, a sentence must be based upon consideration of the particular circumstances of each individual case, which include "the nature and extent of each element of the offense as committed by the defendant." *Id*. at 268-69.

¶ 22    As our supreme court has explained:

"While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused *** and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where *** harm is arguably implicit in the offense for which a defendant is convicted*." (Emphasis in original.) *Saldivar*, 113 Ill. 2d at 269.

The trial court's comments demonstrate that it considered the specific quantity of cocaine defendant possessed and the degree of harm that distributing such a quantity would create. It also considered the need to deter others from committing a similar offense. These were proper considerations in fashioning a sentence. See 730 ILCS 5/5-5-3.2(a)(7) (West 2012) (deterrence to others to commit the offense is an aggravating factor); *People v. Peter*, 220 Ill. App. 3d 626, 632 (1991) (identifying the quantity of drugs in excess of the minimum, purity level, and "potential for having far-reaching impact on society" as factors a trial court may consider at sentencing).

¶ 23    Moreover, possession of a quantity of drugs exceeding the minimum for a sentencing range is a factor the trial court may consider in fashioning the appropriate sentence. See *Peter*, 220 Ill. App. 3d at 632; *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22; *People v. Alcala*, 248 Ill. App. 3d 411, 426 (1993). The sentence imposed, which was a mere 3 years above the minimum sentence but 42 years below the maximum sentence, was not "manifestly disproportionate to the nature of the offense," (*Contursi*, 2019 IL App (1st) 162894, ¶ 23), where defendant possessed 389 grams more than the threshold amount of 900 grams specified in the statute. See 720 ILCS 570/401(a)(2)(D) (West 2012) ("not less than 15 years and not more than 60 years with respect to 900 grams or more" of cocaine).

¶ 24    In sum, defendant has not met his burden to affirmatively establish that the trial court considered a factor implicit in the offense in aggravation. We therefore find no error in the court's sentencing decision and our plain error analysis need go no further. See *People v. Hood*, 2016 IL 118581, ¶¶ 18, 29 (stating there can be no plain error without a finding of error). Because we find no sentencing error, we need not address defendant's alternative ineffective assistance of counsel argument premised on counsel's failure to preserve the sentencing error for review. See *People v.*

*Dorsey*, 2023 IL App (1st) 200304, ¶ 67 ("if there was not the clear or obvious error required for plain error, then there was also no ineffective assistance of counsel").

¶ 25    For the foregoing reasons, we affirm defendant's sentence.

¶ 26    Affirmed.